UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATRIA FULTON,

    Plaintiff,

v.                                           Case No. 15-14110

EQUIFAX INFORMATION SERVICES, LLC, *et al.*,

    Defendants.
                                               /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SANCTIONS**

Before the court are a Motion for Summary Judgment (Dkt. # 34) and a Motion for Sanctions (Dkt. # 28), both filed by Defendant Helvey & Associates, Inc. The motions are fully briefed, and a hearing is unnecessary. *See* E.D. LR 7.1(f)(2). The court will grant Defendant's Motion for Summary Judgment and deny Defendant's Motion for Sanctions for the reasons discussed below.

**I. BACKGROUND**

The following facts are undisputed unless otherwise noted. On July 10, 2013 Plaintiff Natria Fulton filed for Chapter 7 bankruptcy. (Dkt. # 34, Pg. ID 236.) In her bankruptcy petition schedules, Plaintiff listed two accounts with Consumers Energy: account number xx4238, on which she owed $39.96; and number xx4882, on which she owed $285.69; totaling $325.65. (*Id.*) These debts were discharged in connection with Plaintiff's bankruptcy on October 16, 2013. (*Id.*)

Defendant is a debt collection company. (Dkt. # 28-2, Pg. ID 127.) Consumers Energy referred a third account of Plaintiff's to Defendant for collection on August 1, 2014. (*Id.*) This account, number xx5438, was for utility services provided to Plaintiff between July 11, 2013 and March 5, 2014, totaling $623.90. (*Id.*) Defendant began attempting to collect on the account and reported the debt to Equifax Information Services, LLC, a major credit reporting company. (*Id.* at Pg. ID 128.)

In September of 2015, Plaintiff submitted a letter to Equifax, in which she disputed the reported debt to Consumers Energy, as well as listed debts to Amcol Systems, Inc. and Capital One Auto Finance. (Dkt. # 29-7, Pg. ID 200-201.) In pertinent part, the letter states:

> You are reporting this trade line on my credit report regarding a debt allegedly owed to Consumers Energy with an opened date of August 2014. This is false as I included this alleged Consumers Energy debt in my Chapter 7 bankruptcy which was discharged on October 16, 2013. Please see the attached Discharge of Debtor confirming the same. I currently do not have any services with Consumers Energy. Please remove this trade line from my credit report.

(*Id.*) In response, Equifax generated and sent an automated consumer dispute verification request to Defendant on September 13, 2015 through the e-OSCAR automated system used throughout the industry. (Dkt. # 28-2, Pg. ID 128.) The automated request indicated that Plaintiff claimed the debt had been discharged in bankruptcy, but provided no documentation or other information. (*Id.*)

Defendant reviewed the automated request on October 5, 2015. (*Id.*) After investigating through LexisNexis, Defendant correctly concluded that account had not been discharged in bankruptcy as Plaintiff had claimed, as the debt arose well after Plaintiff filed her petition. (*Id.*) The next day, October 6, Defendant responded to the

2

automated request and verified that its reported information was accurate. (*Id.*) Equifax informed Plaintiff that Defendant had verified the reported debt later that day. (Dkt. # 29-8.)

Plaintiff then filed this action against Defendant, Equifax, and Amcol Systems, Inc. on November 23, 2015. (Dkt. #1.) Plaintiff alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiff has since voluntarily dismissed all of her claims against Equifax and Amcol. (Dkt. ## 12, 22.) Plaintiff has also acknowledged that the Consumers Energy account at issue was not discharged in bankruptcy and dismissed her FCRA claims against Defendant. (Dkt. # 27; Dkt. # 30-1, Pg. ID 219.)

Defendant now moves for summary judgment on Plaintiff's sole remaining claim: that Defendant violated the FDCPA by not indicating that Plaintiff disputed the debt in its October 6 response to the automated request. (Dkt. # 34.) Defendant also moves for sanctions against Plaintiff under Rule 11 of the Federal Rules of Civil Procedure. (Dkt. # 28.) For the reasons that follow, the court will grant Defendant's Motion for Summary Judgment, but deny its Motion for Sanctions.

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497

(6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]hat burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (internal quotation marks omitted).

The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). In evaluating a summary judgment motion, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial . . . credibility judgments and weighing of the evidence are prohibited." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (internal quotation marks and citations omitted).

### III. DISCUSSION

FDCPA section 1692(e)(8) prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). To be actionable, the failure to communicate that a debt is disputed must be "false, deceptive, or misleading" and "in connection with the collection of any debt." *Id.* § 1692e. Plaintiff argues that Defendant violated this provision by "failing to communicate to Equifax that she disputed the Consumers Energy tradeline" when responding to the automated dispute verification request. (Dkt. # 36, Pg. ID 253.) The court disagrees.

4

The FCRA requires credit reporting agencies like Equifax to notify debt collectors like Defendant of a consumer's dispute. *See* 15 U.S.C. § 1681i(a)(2). Debt collectors must promptly respond to the credit reporting agency's dispute notification with information about the completeness or accuracy of the information provided by the consumer. 15 U.S.C. § 1681s–2(b). The complained of communication by Defendant took place within this framework.

Plaintiff cannot establish that Defendant's response was "false, deceptive, or misleading" within the meaning of the FDCPA. 15 U.S.C. § 1692(e). As several other courts have found in nearly identical situations, the fact that Plaintiff's debt was disputed was inherent in Defendant's response to Equifax's automated dispute verification request. *Schwantes v. Monco Law Offices, SC*, 2014 WL 4163024, *2 (D. Minn. August 21, 2014); *Surinta v. Credit Control Servs., Inc.*, 2014 WL 538675, at *2 (D. Minn. Feb. 11, 2014); *Neeley v. Express Recovery Servs.*, 2012 WL 1641198, at *2 (D. Utah May 9, 2012). "[T]he sole reason for Defendant to even communicate with the credit bureau[] was in response to Plaintiff's dispute of the debt[] through the credit bureau's own dispute notification system." *Neeley*, 2012 WL 1641198, at *2. Because Defendant's October 6 communication "was a required response in a dialogue premised on mutual knowledge of Plaintiff's dispute of the debt, it cannot accurately be described as 'false, deceptive, or misleading' merely because it lacked express reiteration that a dispute existed." *Surinta*, 2014 WL 538675, at *2. In short, "[s]ince Equifax already knew of the dispute, [Plaintiff] could not have 'misled' Equifax, and therefore [Plaintiff's] response to Equifax could not have been 'deceptive or misleading.'" *Schwantes*, 2014 WL 4163024, at *2.

Plaintiff argues that these cases "are just plain wrong." (Dkt. # 36, Pg. ID 258.) Plaintiff cites no contrary caselaw. Instead, Plaintiff relies entirely on Defendant's alleged failure to follow "industry standards" as set out in the Credit Reporting Resource Guide, published by the Consumer Data Industry Association. (*Id.* at Pg. ID 252, 258.) Even assuming Plaintiff's description of applicable best practices is accurate, Plaintiff's argument is misguided. The FDCPA does not mandate perfect compliance with a particular software system's guidebook – it prohibits the use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The court finds the logic of *Surinta*, *Schwantes*, and *Neeley* persuasive, and Plaintiff fails to meaningfully contest it.

Plaintiff also argues that these cases do not apply because "the great weight of the evidence (let alone a question of fact) shows that [Defendant] never actually communicated to Equifax that the subject account was disputed." (Dkt. # 36, Pg. ID 262.) Defendant provides affidavits and records showing that Plaintiff's dispute was internally noted on Plaintiff's account on October 6, and was communicated to Equifax by use of the "XB" compliance code in its monthly report to Equifax made the next day, October 7, 2015. (Dkt. # 28-2, Pg. ID 132; Dkt. # 30-2, Pg. ID 223.) In opposition, Plaintiff points to another automated dispute verification request, sent October 8, 2015, that lacked an "XB" compliance code in the relevant field (Dkt. # 29-6) and to Defendant's account notes, which show no activity on Plaintiff's account on October 7. (Dkt. # 28-2, Pg. ID 132.) These, Plaintiff argues, create "a clear question of fact as to whether [Defendant] updated its monthly reporting." (Dkt. # 36, Pg. ID 254.) The court disagrees.

6

First, the lack of account activity on October 7 does not conflict with Defendant's evidence that the dispute was noted on the account on October 6. (Dkt. # 28-2, Pg. ID 132.) Further, Plaintiff points to nothing in the record to suggest that the monthly report to Equifax would be reflected in the account notes. In fact, no monthly reporting is reflected in the account notes at all. (*Id.*)

Second, Plaintiff's reliance on the later dispute verification request assumes that the later request would carry the "XB" designation. But Plaintiff's own guide expressly contradicts that assumption. According to the guide, the compliance code "should be reported one time and will be deleted only when another Compliance Condition Code or the [removal value] is reported." (Dkt. # 29-4, Pg. ID 191.) An example follows on the same page, in which the "XB" code is reported once, followed by three months of "blank" compliance condition codes before a new value is entered. (*Id.*) A "blank" compliance condition code on a later automated request does not indicate a prior failure to use the XB code, it is exactly what one would expect according to Plaintiff's proffered guide. (*Id.*)

Plaintiff thus points to nothing in the record to genuinely dispute that Defendant communicated the disputed nature of Plaintiff's account in its monthly report to Equifax on October 7, 2015. As a result, there is no triable issue of fact material to Defendant's liability on Plaintiff's FDCPA claim, and Defendant is entitled to summary judgment.

Defendant argues that it is entitled to sanctions because "Plaintiff's claim under [the FDCPA] will fail as a matter of law and Plaintiff refuses to dismiss it." (Dkt. # 28, Pg. ID 124.) Given the dearth of Sixth Circuit precedent relevant to the issues discussed above, the court finds that Rule 11 sanctions are not warranted at this time.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary Judgment (Dkt. # 34) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Sanctions (Dkt. # 28) is DENIED. A separate Judgment shall issue.

            /s/ Robert H. Cleland
           ROBERT H. CLELAND
           UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 30, 2016, by electronic and/or ordinary mail.

           s/Lisa Wagner
           Case Manager and Deputy Clerk
           (313) 234-5522